## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## COVINGTON DIVISION

*Electronically Filed*

| | |
|---|---|
| LISA KAY GOINS, | Civil Action No. _____ |
| *Plaintiff*, | |
| v. | |
| SAINT ELIZABETH MEDICAL CENTER, INC., TRI-STATE GASTROENTEROLOGY ASSOCIATES, JOEL M. WARREN, M.D., MODERNATX, INC., THE KROGER CO., JOHN DOES and JANE DOES NOS. 1-5, | Removed from Boone Circuit Court Civil Action No. 22-CI-00701 |
| *Defendants*. | |

## NOTICE OF REMOVAL OF CIVIL ACTION

Defendant ModernaTX, Inc. ("Moderna") removes this action from Boone Circuit Court to the United States District Court for the Eastern District of Kentucky, Covington Division, reserving all defenses and all objections to venue based on 42 U.S.C. § 247d-6d(e)(1), and pursuant to 28 U.S.C. §§ 1331, 1332, 1346, 1441, 1442, and 1446, on the following grounds:

## BACKGROUND

1.     This action was filed on June 22, 2022, in Boone Circuit Court, bearing Case No. 22-CI-00701.  (Exhibit A, Summons and Complaint.)  Removal to this Court is proper pursuant to 28 U.S.C. § 97 and 28 U.S.C. § 1441, *et seq.*, as Boone Circuit Court is located within the Eastern District of Kentucky.

2.     Plaintiff brings claims against Moderna, The Kroger Company ("Kroger"), and a number of healthcare providers and medical facilities.  Hereinafter, the named healthcare providers

and medical facilities (Saint Elizabeth Medical Center, Inc., Tri-State Gastroenterology Associates, and Joel M. Warren, M.D.) are collectively referred to as the "Provider Defendants," and the unnamed healthcare providers (John Does and Jane Does Nos. 1-5) are collectively referred to as the "Doe Defendants."

3.       In 2020, Moderna developed a COVID-19 Vaccine, mRNA-1273 (the "Moderna COVID-19 Vaccine" or "Vaccine"), in collaboration with the U.S. government.  On December 18, 2020, the U.S. Food and Drug Administration ("FDA") granted the Vaccine emergency use authorization ("EUA").[1]  On January 31, 2022, the FDA granted the Vaccine full approval.[2]

4.       Plaintiff alleges that in July 2021, she was administered two doses of the Moderna COVID-19 Vaccine at a pharmacy in Florence, Kentucky owned by Kroger.  (Compl. ¶¶ 12-13.) She alleges that several days after receiving her second dose of the Vaccine, she experienced low blood glucose and was admitted to St. Elizabeth Hospital.  (*Id.* ¶¶ 14-15.)

5.       The gravamen of Plaintiff's claims is that the Provider Defendants committed medical malpractice.  Specifically, Plaintiff alleges that from August to December 2021, she was treated by healthcare providers in several different hospitals for a number of medical conditions stemming from an initial diagnosis of hypoglycemia and she experienced various injuries as a result of that treatment.  (*Id.* ¶¶ 15-63.)  Plaintiff alleges, for example, that certain healthcare providers:  (a) placed her on an IV drip of concentrated glucose that was too thick, causing her

---

[1] *FDA Takes Additional Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for Second COVID-19 Vaccine*, U.S. FDA (Dec. 18, 2020), *available at* https://www.fda.gov/news-events/press-announcements/fda-takes-additional-action-fight-against-covid-19-issuing-emergency-use-authorization-second-covid .

[2] *Coronavirus (COVID-19) Update: FDA Takes Key Action by Approving Second COVID-19 Vaccine*, U.S. FDA (Jan. 31, 2022), *available at* https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-takes-key-action-approving-second-covid-19-vaccine .

veins to rupture; (b) improperly performed a pancreatic biopsy, which caused her to develop a pseudocyst; and (c) "nicked" her spleen during a surgical procedure, which caused her to eventually experience "hemorrhagic shock, pancreatic necrosis, pancreatitis associated with posterior wall gastric perforation, spleen hematoma, acute blood loss and acute pancreatitis" and to need a feeding tube that later became infected. (*Id.* ¶¶ 15-63.) The only allegation relating to Moderna in Plaintiff's recitation of her "Factual Allegations" (*id.* ¶¶ 12-67) is that in August 2021, some unidentified doctors speculated that Plaintiff's low glucose levels "could have been a reaction to her July 31, 2021 second Moderna COVID-19 vaccine." (*Id.* ¶ 26.)

6.      Plaintiff brings claims for: (a) negligence and battery against Dr. Joel M. Warren, III and John Does and Jane Does 1-5; (b) negligence, vicarious liability, negligent hiring/retention/supervision, and breach of fiduciary duty against Saint Elizabeth Medical Center, Inc. and Tri-State Gastroenterology Associates; (c) negligence and battery against Kroger; and (d) negligence and battery against Moderna. (*Id.* ¶¶ 1-38 (pages 11-17).)

7.      Though Plaintiff uses similar language in setting forth her causes of action against each Defendant, her claims against the Provider Defendants are distinct from her claims against Moderna.  As to Moderna, Plaintiff claims that it committed negligence through "medical mismanagement and mistreatment" of Plaintiff, and also claims that it committed battery against Plaintiff by distributing a Vaccine that was "contraindicated for" an unspecified "medical condition." (*Id.* ¶¶ 32-38 (pages 16-17).) The Complaint does not, however, set forth any concrete allegation of any purported misconduct by Moderna. (*Id.* ¶¶ 12-67 (pages 4-11); *see also id.* ¶¶ 1-38 (pages 11-17).) In contrast, Plaintiff's causes of action against the Provider Defendants do not even refer to the Vaccine and instead allege that each Provider engaged in improper care and medical treatment of Plaintiff. (*Id.* ¶¶ 1-24 (pages 11-15).)

3

## GROUNDS FOR REMOVAL

8.     Plaintiff's claims are subject to federal jurisdiction for three separate and independent reasons:  (a) Plaintiff's claims seek to hold Moderna liable for actions Moderna took under the authority of a federal officer; (b) complete diversity of citizenship exists because the citizenship of the Provider Defendants should be ignored; and (c) Plaintiff's claims arise under federal law or necessarily raise substantial federal questions.

### I.     This Court Has Jurisdiction Under The Federal Officer Statute.

9.     Removal of this action to federal court is proper under 28 U.S.C. § 1442(a), as Plaintiff brings claims against Moderna based on actions that it undertook at the direction of a federal officer.

10.     "The federal officer removal statute reflects a congressional decision to ensure that a federal officer is tried on state law issues without local prejudices impinging the fairness of the trial and to enable the defendant to 'have the validity of his immunity defense adjudicated, in a federal forum.'"  *Stallings v. Georgia-Pacific Corp.*, 2013 WL 1563231, at *2 (W.D. Ky. Apr. 12, 2013) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)); *accord Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006); *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 286-87 (6th Cir. 2016).  For this reason, the Supreme Court "has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"  *Manypenny*, 451 U.S. at 242 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)); *accord Stallings*, 2013 WL 1563231, at *2; *Kessnick v. Club Car Acceptance Corp.*, 2007 WL 3120692, at *2 (E.D. Ky. Oct. 23, 2007).

11.     The Sixth Circuit has held that federal officer removal is proper where the removing party shows that:  (a) it is a "person" within the meaning of the statute who "acted under a federal officer"; (b) "it performed the actions for which it is being sued under color of federal office"; and (c) "it raised a colorable federal defense."  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (alterations, internal quotation marks, and citations omitted); *see also Stallings*, 2013 WL 1563231, at *1.  All three of its requirements are satisfied here.

12.     *First*, Moderna is a "person" under 28 U.S.C. § 1442(a).  Indeed, courts have long recognized that the removal statute also applies to private persons and corporate entities "who lawfully assist" the federal officer "in the performance of his official duty."  *See, e.g.*, *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007); *Ruppel v. CBS Corp*., 701 F.3d 1176, 1181 (7th Cir. 2012); *Bennett*, 607 F.3d at 1085-86.

13.     For federal jurisdictional purposes, Moderna also "acted under a federal officer," when it developed, tested, and manufactured the Vaccine that Plaintiff claims harmed her.  As a threshold matter, the "acting under" requirement is broad and to be liberally construed.  *Watson*, 551 U.S. at 147; *see also Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 n.3 (1st Cir. 2022); *Ruppel*, 701 F.3d at 1181.  More specifically, the phrase "acting under" includes "an effort to assist, or to help carry out, the duties or tasks of the federal superior."  *Watson*, 551 U.S. at 152 (emphasis omitted); *accord In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 468 (3d Cir. 2015); *Bennett*, 607 F.3d at 1086-87.  "[A] private contractor is acting under a government agency," for example, "when it 'is helping the Government to produce an item that it needs.'"  *Stallings*, 2013 WL 1563231, at *3 (quoting *Watson*, 551 U.S. at 153).

14.     With the onset of the SARS-CoV-2 pandemic in 2020, the U.S. government needed to rapidly develop, manufacture, and distribute safe and effective COVID-19 vaccines.  To that end, the U.S. government set a goal of "delivering safe and effective vaccines to the American people by the end of [2020]."[3]  It is indisputable that Moderna was one of a small number of vaccine manufacturers that helped the U.S. government achieve this critical goal.  Moderna's Vaccine was a key part of the U.S. government's efforts to respond to—and overcome—the SARS-CoV-2 pandemic.

15.     The Moderna COVID-19 Vaccine was "co-developed by Moderna and investigators from [the National Institute of Allergy and Infectious Diseases] Vaccine Research Center."[4]  Moderna also received funding from the U.S. government to help accelerate the clinical trials and development of the Vaccine.[5]

---

[3] *Trump Administration Collaborates With Moderna to Produce 100 Million Doses of COVID-19 Investigational Vaccine"*, U.S. Dep't of Def. (Aug. 11, 2020), *available at* https://www.defense.gov/News/Releases/Release/Article/2309561/trump-administration-collaborates-with-moderna-to-produce-100-million-doses-of/ .

[4] *See Moderna Announces FDA Authorization of Moderna COVID-19 Vaccine in U.S.*, Moderna (Dec. 18, 2020), *available at* https://investors.modernatx.com/news/news-details/2020/Moderna-Announces-FDA-Authorization-of-Moderna-COVID-19-Vaccine-in-U.S/default.aspx .

[5] *Moderna Announces Award from U.S. Government Agency BARDA for up to $483 Million to Accelerate Development of mRNA Vaccine (mRNA-1273) Against Novel Coronavirus*, Moderna (Apr. 16, 2020), *available at* https://investors.modernatx.com/news/news-details/2020/Moderna-Announces-Award-from-U.S.-Government-Agency-BARDA-for-up-to-483-Million-to-Accelerate-Development-of-mRNA-Vaccine-mRNA-1273-Against-Novel-Coronavirus/default.aspx ; *see also Biden Administration Purchases Additional Doses of COVID-19 Vaccines from Pfizer and Moderna*, U.S. Dep't of Health and Human Servs. (Feb. 11, 2021), *available at* https://www.hhs.gov/about/news/2021/02/11/biden-administration-purchases-additional-doses-covid-19-vaccines-from-pfizer-and-moderna.html .

To be sure, Moderna also leveraged its own resources and expertise to develop and manufacture the Vaccine—and engaged in a secondary stock offering in 2020 to generate approximately one billion dollars of working capital.  *See Moderna Announces Proposed Public Offering of Shares of Common Stock*, Moderna (May 18, 2020), *available at* https://investors.modernatx.com/news/news-details/2020/Moderna-Announces-Proposed-Public-Offering-of-Common-Stock/default.aspx .

16.     Moderna's unique coordination with the federal government in developing and distributing the Vaccine included the following activities:

     a.     The protocols for the Moderna COVID-19 Vaccine clinical trials were developed in collaboration with the U.S. government;[6]

     b.     The NIH led the Phase 1 clinical trials for the Vaccine;[7]

     c.     The U.S. government contracted with Moderna to manufacture hundreds of millions of doses of the Vaccine;[8]

     d.     The U.S. government designated Moderna's orders for materials and equipment for the Vaccine as government "rated" orders placed in support of a national defense and emergency preparedness program;[9] and

     e.     The U.S. government directed and oversaw distribution of the Vaccine in the United States in coordination with a centralized distributor selected by the U.S. Centers for Disease Control and Prevention ("CDC").[10]

---

[6] *Trump Administration Announces Framework and Leadership for 'Operation Warp Speed'*, U.S. Dep't of Def. (May 15, 2020), *available at* https://www.defense.gov/News/Releases/Release/Article/2310750/trump-administration-announces-framework-and-leadership-for-operation-warp-speed/ .

[7] *See Moderna Announces FDA Authorization of Moderna COVID-19 Vaccine in U.S.*, Moderna (Dec. 18, 2020), *available at* https://investors.modernatx.com/news/news-details/2020/Moderna-Announces-FDA-Authorization-of-Moderna-COVID-19-Vaccine-in-U.S/default.aspx .

[8] *See, e.g., Trump Administration Collaborates With Moderna to Produce 100 Million Doses of COVID-19 Investigational Vaccine"*, U.S. Dep't of Def. (Aug. 11, 2020), *available at* https://www.defense.gov/News/Releases/Release/Article/2309561/trump-administration-collaborates-with-moderna-to-produce-100-million-doses-of/; *U.S. Government Purchases Additional 100 Million Doses of Moderna's COVID-19 Vaccine*, Moderna (Feb. 11, 2021), *available at* https://investors.modernatx.com/news/news-details/2021/U.S.-Government-Purchases-Additional-100-Million-Doses-of-Modernas-COVID-19-Vaccine/default.aspx .

[9] *See, e.g.*, August 9, 2020 Amendment of Solicitation/Modification of Contract, at 17-19, U.S. Dep't of Health and Human Servs., *available at* https://www.hhs.gov/sites/default/files/vaccine-contract-with-moderna-modifications-p00001-p00002-p00003.pdf .

[10] *See, e.g.*, *COVID-19 Vaccines: A Year Later*, McKesson, *available at* https://www.mckesson.com/Our-Stories/COVID-19-Vaccines-A-Year-Later/ (last visited July 15, 2022); *COVID-19 Vaccine Background*, McKesson, *available at* https://www.mckesson.com/About-McKesson/COVID-19/Vaccine-Support/ (last visited July 15, 2022).

17.     Courts have found that this type of close coordination between private parties and the U.S. government readily satisfies the "acting under" requirement for federal officer removal. In *Kehler v. Hood*, for example, a court considered analogous issues in a product liability action involving the manufacturer of the H1N1 vaccine—a countermeasure developed in response to an earlier public health emergency.  2012 WL 1945952, at \*1, \*3 (E.D. Mo. May 30, 2012).  The *Kehler* court found federal officer jurisdiction proper because the manufacturer there, like Moderna here, acted "pursuant to the directive of and under contract with the United States government in order to prevent an influenza pandemic in the United States."  *Id*. at \*1-3 (dismissing claims against the vaccine manufacturer as barred under the PREP Act).[11]

18.     Courts have reached similar conclusions in the COVID-19 context.  In relation to COVID-19 response activities, for example, a company's interactions with multiple federal agencies—namely by working with the agencies to "'produce an item that [the government] needs'" in order to address this unprecedented national emergency—satisfied the "acting under" requirement for federal officer removal.  *Johnson v. Tyson Foods, Inc*., 2021 WL 5107723, at \*3-7 (W.D. Tenn. Nov. 3, 2021) (quoting *Watson*, 551 U.S. at 153).  More specifically, the *Johnson* court held that the defendant food manufacturing company established federal jurisdiction under the federal officer removal statute by showing that it collaborated with the federal government to continue its operations during the COVID-19 pandemic in order to help ensure an adequate food

---

[11] As discussed more fully herein, a broad federal statute—the Public Readiness and Emergency Preparedness Act ("PREP Act")—expressly protects COVID-19 vaccine manufacturers and their employees, among others, from precisely the type of claims Plaintiff purports to bring.  *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), effective February 4, 2020, and amended by 85 Fed. Reg. 21012 (Apr. 15, 2020) and subsequent amendments (the "Declaration").

supply.  *Id.*; *accord Reed v. Tyson Foods, Inc.*, 2021 WL 5107725, at *3-7 (W.D. Tenn. Nov. 3, 2021).

19.    Moderna, in its development and manufacturing of the Vaccine, similarly acted at the direction of the U.S. government as part of a federal effort to address the ongoing national emergency—and to achieve the government's ultimate goal of facilitating the development, manufacturing, and distribution of COVID-19 vaccines.  These actions were taken in "an effort to assist, or to help carry out, the duties or tasks" directed by the U.S. government, *see Watson*, 551 U.S. at 152 (emphasis omitted), including the Department of Health and Human Services and the President, in responding to the SARS-CoV-2 pandemic.  Moderna's actions relating to the Vaccine involved "strong government intervention," which went far beyond the "general auspices of a federal officer, such as being a participant in a regulated industry."  *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) (internal quotation marks and citation omitted).  Indeed, Moderna had a "special relationship" with the government; it was not merely "regulated by federal law." *See Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).  Moderna was thus "acting under" the authority of federal officers, as that phrase is used in the context of federal officer jurisdiction.

20.    ***Second***, there is a clear nexus between Moderna's actions under federal authority and Plaintiff's claims against Moderna, which establishes that Moderna "performed the actions for which it is being sued under color of [federal] office."  *See Bennett*, 607 F.3d at 1088 (internal quotation marks and citations omitted).  The federal officer removal statute provides for removal of a civil action "for or ***relating to***" an act under color of federal office.  28 U.S.C. § 1442(a)(1) (emphasis added); *see generally Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291-96 & n.8 (5th Cir. 2020).  The Sixth Circuit has underscored that "[t]he hurdle erected by this requirement

9

is quite low." *Bennett*, 607 F.3d at 1088 (quoting *Isaacson*, 517 F.3d at 137).  Accordingly, the nexus requirement is satisfied where, as here, a plaintiff's allegations arise from conduct that a private party performed pursuant to an agreement with the U.S. government.  *See id.*; *accord Stallings*, 2013 WL 1563231, at \*4.  Viewed in the most generous light, Plaintiff's cursory claims against Moderna likely relate to the development, manufacturing, and distribution of the Moderna COVID-19 Vaccine—activities that Moderna performed pursuant to directives from the U.S. government and/or contractual agreements with the U.S. government.[12]

21.     ***Third***, Moderna intends to assert several "colorable federal defense[s]," including immunity and preemption defenses under the PREP Act, as well as the government contractor defense.  For purposes of federal officer removal, this third element is also broadly construed.  "A colorable federal defense need only be plausible . . . a district court is not required to determine its validity at the time of removal."  *Bennett*, 607 F.3d at 1088 (citations omitted); *see also Kircher*, 547 U.S. at 644 n.12; *Willingham*, 395 U.S. at 406-07; *Cuomo v. Crane Co.*, 771 F.3d 113, 115-116 (2d Cir. 2014); *Moore*, 25 F.4th at 37.

22.     Moderna's immunity and preemption defenses under the PREP Act are indeed colorable. *See infra* ¶¶ 49-59.  The only other case filed and served against Moderna involving its Vaccine was quickly dismissed by the district court after removal as, *inter alia*, barred under the PREP Act.  (Exhibit B, *Druhan v. Hoge*, No. 1:22-cv-10437 (D. Mass. May 10, 2022), ECF No. 21.)  *Druhan* is in accord with other courts holding that the PREP Act bars product liability claims

---

[12]     *See* BARDA and ModernaTX, Inc. Contract (Apr. 16, 2020), *available at* https://www.hhs.gov/sites/default/files/moderna-75a50120c00034.pdf ; *see also U.S. Government Purchases Additional 100 Million Doses of Moderna's COVID-19 Vaccine*, Moderna (Feb. 11, 2021), *available at* https://investors.modernatx.com/news/news-details/2021/U.S.-Government-Purchases-Additional-100-Million-Doses-of-Modernas-COVID-19-Vaccine/default.aspx .

against vaccine manufacturers protected by the PREP Act.  *See, e.g.*, *Kehler*, 2012 WL 1945952, at *1-3.

23.    Moderna's government contractor defense is also colorable.  "The Supreme Court [has] held that the 'uniquely federal interest' of 'getting the Government's work done' requires that, under certain circumstances, a private contractor must be protected from tort liability associated with its performance of a government procurement contract."  *Bennett*, 607 F.3d at 1088-89 (quoting *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988)).  This concept— known as the government contractor defense—is satisfied where:  "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Id.* (quoting *Boyle*, 487 U.S. at 512).  Here, the government contractor defense is appropriate given the U.S. government's role in developing and distributing the Vaccine, including its involvement in the Vaccine Phase 1 clinical trials and handling of early regulatory submissions for the Vaccine.  *See, e.g.*, ¶ 15, *supra*; *Tate v. Boeing Helicopters (Tate I)*, 55 F.3d 1150, 1154-56 (6th Cir. 1995) (finding the elements of the government contractor defense satisfied where, *inter alia*, the U.S. Army closely scrutinized the defendants' development of the product and engaged in a "back and forth" dialogue with the defendants throughout the development process); *see also, e.g.*, *Tate v. Boeing Helicopters (Tate II)*, 140 F.3d 654 (6th Cir. 1998).

**II.    The Court Has Diversity Jurisdiction.**

24.    Removal of this action to federal court is also proper for the separate and independent reason that there is complete diversity of citizenship here between Moderna, Kroger, and Plaintiff—and the citizenship of the Provider Defendants should be ignored because they are

11

subject to severance under Federal Rule of Civil Procedure 21 or, alternatively, the fraudulent misjoinder doctrine.

### A.   Plaintiff Is Diverse From Moderna and Kroger.

25.     Plaintiff is a Kentucky citizen.  (Compl. ¶ 1.)

26.     Moderna and Kroger are citizens of states other than Kentucky.

27.     For purposes of diversity jurisdiction, a corporation is a "citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

28.     The Kroger Co. is incorporated in Ohio, and its principal place of business is Ohio.  *See Samori v. Ralphs Grocery Co.*, 2021 WL 1212798, at *4 (N.D. Ill. Mar. 31, 2021); *see also Business Search*, Secretary LaRose & The Office, *available at* https://businesssearch.ohiosos.gov/#DocidDiv (last visited July 15, 2022) (Entity No. 14931).

29.     ModernaTX, Inc. is incorporated in Delaware and its principal place of business is Massachusetts.  *See Entity Search*, Delaware Dep't of State: Div. of Corps., *available at* https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx (last visited July 15, 2022) (File No. 4676789).

### B.   The Citizenship Of The Doe Defendants Should Be Ignored.

30.     The citizenship of the unnamed, unidentified Doe Defendants should be ignored for purposes of determining whether this action is removable based on diversity of citizenship.  *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of [diversity of citizenship], the citizenship of defendants sued under fictitious names shall be disregarded.").

### C.  The Citizenship of the Provider Defendants Should be Ignored.

#### 1.  The Provider Defendants Should Be Severed Under Rule 21.

31.    Even where the face of a complaint shows a lack of complete diversity, removal based on diversity jurisdiction is proper if the claims against the non-diverse defendants are severable under Federal Rule of Civil Procedure 21.  Defendants are severable under Federal Rule of Civil Procedure 21 if they are either:  (a) unnecessary or dispensable parties under Rule 19, or (b) if the claims against the defendants are sufficiently distinct from claims against other defendants under Rule 20.  Here, the Provider Defendants should be severed on both grounds, each of which perfects diversity jurisdiction as to Moderna and Kroger.

32.    The Supreme Court has established that "Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time" in the litigation. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989).  It is well settled that under Rule 21, a district court may dismiss a dispensable nondiverse party to achieve diversity jurisdiction.  *See, e.g.*, *Grant Cnty. Deposit Bank v. McCampbell*, 194 F.2d 469, 472 (6th Cir. 1952); *Bulaon v. Gen. Motors, LLC*, 2020 WL 5087976 (E.D. Mich. Aug. 27, 2020); *Mayfield v. London Women's Care, PLLC*, 2015 WL 3440492, at *5 (E.D. Ky. May 28, 2015); *Lewis v. Nationstar Mortg.*, 2014 U.S. Dist. LEXIS 112206 (E.D. Mich. July 25, 2014), *report and recommendation adopted*, 2014 WL 3956414, at *2 (E.D. Mich. Aug. 12, 2014); *Kelly v. Aultman Physician Ctr.*, 2013 WL 2358583, at *3 (N.D. Ohio May 29, 2013); *McElroy v. Hamilton Cnty. Bd. of Educ.*, 2012 WL 12871469, at *2-3 (E.D. Tenn. Dec. 20, 2012); *PrePaid Lab, LLC v. Lab. Corp. of Am. Holdings*, 2011 WL 2532405, at *1-2 (N.D. Ohio June 24, 2011); *DeGidio v. Centocor, Inc.*, 2009 WL 1867676, at *2-5 (N.D. Ohio June 29, 2009); *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868, 872 (N.D. Ohio 2009), *as amended* (May 27, 2009).

33.     *Mayfield* is particularly instructive.  The primary plaintiff joined product liability claims against the manufacturers of an allegedly defective surgical mesh together with a medical malpractice claim against plaintiff's healthcare providers involved in the implantation of the mesh. 2015 WL 3440492, at *1.  Judge Bunning held that severing the non-diverse medical providers and retaining jurisdiction over the diverse manufacturer defendants was appropriate pursuant to Rule 21 because the healthcare providers were neither necessary nor indispensable parties.  *Id.* at *3-6.  As Judge Bunning explained, the "medical malpractice claim against [the] Healthcare Defendants [wa]s highly distinct from the various claims brought against [the mesh manufacturers] for products liability," primarily because it was "comprised of unique legal elements" and "based on completely different factual allegations."  *Id.* at *4; *see id.* at *5.  Judge Bunning reasoned that "[j]ust as no one from [the mesh manufacturers] was involved with [the plaintiff's] surgery, [the implanting physician] had nothing to do with the design, manufacture or sale of a single pelvic mesh implant" and thus, the non-diverse healthcare defendants were "equally capable of protecting their interests in state court."  *Id.*

34.     Here too. Moderna and Kroger (the pharmacy that Plaintiff alleges administered her the Vaccine) had no involvement in the medical treatment and surgical procedures that Plaintiff received from the Provider Defendants.  Conversely, the Provider Defendants had zero involvement in any aspect of the Vaccine's development, manufacturing, or administration. Notably, the *Mayfield* court rejected the plaintiffs' contentions that they would be "prejudiced by having to try two cases instead of one," as it found that "proceeding against Healthcare Defendants in state court is an adequate legal remedy."  *Id.* at *5.  To that end, the court underscored that separate discovery tracts for the medical malpractice claims and the product liability claims would generate procedural efficiencies.  *Id.*  Such procedural efficiencies are not limited to circumstances

where a related multi-district litigation is also pending—they can also be achieved where discovery

can proceed as to a plaintiff's medical malpractice claims in state court, while the merits of various

federal defenses (such as preemption under the PREP Act) are addressed simultaneously in federal

court.

35.     *Joseph* is also instructive, as it similarly involved the improper joinder of claims

against a diverse product liability defendant and non-diverse medical malpractice defendants.  614

F. Supp. 2d at 870-72.  As relevant here, the district court held that the healthcare providers were

"not necessary parties as the resolution of a claim against them would not necessarily resolve the

[plaintiffs'] claim against [the pharmaceutical manufacturer]" and the medical malpractice claims

against the healthcare providers "differ[ed] from the [plaintiffs'] products liability claim" against

the manufacturer.  *Id.* at 872.  Accordingly, the court severed the healthcare provider defendants

pursuant to Rule 21 and retained diversity jurisdiction over the defendant pharmaceutical

manufacturer.  *Id.* at 871-74.

36.     A number of courts outside of the Sixth Circuit have similarly severed medical

malpractice claims against non-diverse defendants and retained jurisdiction over product liability

claims against diverse defendants.  *See, e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d

702, 707 (D. Md. 2015); *Cooke-Bates v. Bayer Corp.*, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8,

2010), *certificate of appealability denied*, 2010 WL 4789838 (E.D. Va. Nov. 16, 2010); *Sutton v.

Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 683 (D.

Nev. 2004); *see also, e.g.*, *Clements v. Essex Ins. Co.*, 2016 WL 3144151, at *3 (M.D. Fla. June 6,

2016); *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP*, 2003 WL 21313957, at *5-6

(D. Kan. May 23, 2003).

37.     This Court should similarly sever and remand Plaintiff's claims against the Provider Defendants and retain jurisdiction over Plaintiff's claims against Moderna and Kroger. Plaintiff's claims against Moderna and Kroger are even more factually distinct from her claims against the Provider Defendants than in *Mayfield* and *Joseph*.[13]   Despite their threadbare nature, Plaintiff's allegations against Moderna and Kroger ostensibly implicate the development, manufacturing, distribution, and/or administration of the Moderna COVID-19 Vaccine.  (*Id.* ¶¶ 25-38 (pages 15-17).)   In contrast, Plaintiff's claims against the Provider Defendants are all associated with medical treatment Plaintiff allegedly received in the days and months after receiving the Vaccine.  (*Id.* ¶¶ 1-24 (pages 11-15).)  The distinctiveness of these two sets of claims is further confirmed by the fact that Plaintiff's causes of action against the Provider Defendants do not even make a single reference to the Vaccine.  (*Id.*)  Accordingly, there is no overlap between the factual allegations against Moderna and Kroger and the Provider Defendants that would make the Provider Defendants necessary or indispensable parties under Rule 19.

38.     Beyond Rule 19, Plaintiff's claims against the Provider Defendants are also improperly joined under Rule 20—which provides a distinct basis for severance.  Indeed, Rule 21 permits severance of claims against non-diverse defendants that do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," like Plaintiff's claims against Moderna and Kroger.  Fed. R. Civ. P. 20(a)(2)(A); Fed. R. Civ. P. 21; *see Loeffelbein*, 2003 WL 21313957, at *5 ("Rule 21 is a mechanism for correcting . . . the misjoinder . . . of parties or

---

[13] Indeed, unlike in *Mayfield* and *Joseph*, the Provider Defendants here did not even prescribe or administer the Vaccine to Plaintiff—whereas in *Mayfield* and *Joseph,* the healthcare defendants were at least alleged to have prescribed and/or administered the medical devices/pharmaceuticals that gave rise to plaintiffs' product liability claims.  *See Mayfield*, 2015 WL 3440492, at *1; *Joseph*, 614 F. Supp. 2d at 872-73.

claims" which "arises when the claims and parties fail to satisfy any of the conditions of permissive joinder under Rule 20(a)" (citation omitted)).

39.     Courts in this circuit and other circuits have retained jurisdiction over diverse defendants and severed claims against non-diverse defendants where the claims against the non-diverse defendants were separate and distinct and arose from different transactions or occurrences. For example, the district court in *In re Stryker Rejuvenate & AGB II Hip Implant Products Liability Litigation* held that a plaintiff's medical malpractice claims against the hospital where the plaintiff had hip surgery were not properly joined with product liability claims against the manufacturer of the hip implant provided during the surgery.  2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013). Although there was only one surgical procedure involving the allegedly defective implant, the plaintiff's claims did not arise from the same transaction or occurrence:  the claims against the healthcare provider defendants "require[d] evidence regarding Plaintiff's care, treatment, and services provided by the Hospital Defendants and their staff" while the claims "against the Stryker entities, on the other hand, [were] based on alleged manufacturing and design defects" and would "require evidence as to the development, manufacture, and testing of such devices."  *Id.*  Thus, "[a]ny liability that may be found against either the Stryker entities or the Hospital Defendants would not be a basis for liability as to the other."  *Id.*; *see also, e.g.*, *DeGidio*, 2009 WL 1867676, at *2-5 (severing medical negligence claims from product liability claims); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007) (same).  Accordingly, the *In re Stryker* court severed and remanded the medical malpractice claims (as to which diversity was lacking) and retained jurisdiction over the remaining product liability claims.  *See In re Stryker*, 2013 WL 6511855, at *5.

40.     Here too, Plaintiff's medical malpractice claims against the Provider Defendants are not properly joined with her claims against Moderna and Kroger.  As such, Plaintiff's medical malpractice claims should be severed from her claims against Moderna and Kroger—and remanded.  If Plaintiff wants to pursue claims against the Provider Defendants, she has an adequate remedy in state court.  *See, e.g.*, *Mayfield*, 2015 WL 3440492, at *5.

### 2. Plaintiff's Claims Against The Provider Defendants Are Also Fraudulently Misjoined.

41.     Alternatively, the citizenship of the Provider Defendants should be ignored because Plaintiff's claims against them are fraudulently (or procedurally) misjoined to her claims against Moderna and Kroger.

42.     "Misjoinder occurs when plaintiffs, some with claims against a diverse party and some without, join together in one action to defeat diversity jurisdiction, even though their claims do not satisfy Rule 20(a)'s requirements for permissive joinder." *Gordon v. Minn. Mining & Mfg. Co.*, 2005 WL 8164938, at *2 (E.D. Ky. Oct. 14, 2005).[14]  Where claims against different defendants "involv[e] different legal theories and different types of proof," courts may apply the fraudulent misjoinder doctrine to disregard the non-diverse defendants and retain diversity jurisdiction.  *See id.* at *2-5; *Asher v. Minn. Mining & Mfg. Co.*, 2005 WL 8164926, at *1-3 (E.D. Ky. Oct. 27, 2005).

43.     Two cases are particularly analogous:  *Hughes v. Sears, Roebuck & Co.*, 2009 WL 2877424 (N.D. W. Va. Sept. 3, 2009), and *Smith v. Hendricks*, 140 F. Supp. 3d 66 (D.D.C. 2015).

---

[14] Here, as in in *Asher* and *Gordon*, the Court "need not decide whether federal or state joinder rules apply where there is an allegation of misjoinder because the Kentucky and federal rules regarding misjoinder are, in all significant respects, identical." *Asher v. Minnesota Mining & Mfg. Co.*, 2005 WL 1593941, at *9 (E.D. Ky. June 30, 2005); *Gordon*, 2005 WL 8164938, at *2-5; *see also* Kentucky CR 20.01; Fed. R. Civ. P. 20(a).

In both cases, the district court found that the plaintiff fraudulently misjoined medical malpractice claims to product liability claims.  Accordingly, both district courts severed and remanded the medical malpractice claims against the non-diverse medical providers—and exercised diversity jurisdiction over the product liability claims against the diverse manufacturers.  *See Hughes*, 2009 WL 2877424, at *1, *5-7 (involving product liability claims against the manufacturer and seller of a treadmill, and a medical malpractice claim against the emergency room doctor who allegedly misdiagnosed the plaintiff's injury after she fell from the treadmill); *Smith*, 140 F. Supp. 3d at 69, 74-75 (involving product liability claims against the manufacturer of surgical mesh, and malpractice claims against the implanting physician for allegedly failing to provide the plaintiff with any information and literature regarding the surgical mesh and its possible side effects).

44.     Here too, Plaintiff's claims against the non-diverse Provider Defendants are misjoined and should not defeat diversity jurisdiction over her claims against Moderna and Kroger. Since none of the properly joined Defendants are Kentucky citizens like Plaintiff, there is complete diversity of citizenship.  *See* 28 U.S.C. § 1332(a).

### D.  The Amount-In-Controversy Exceeds $75,000.

45.     The amount-in-controversy requirement for diversity jurisdiction is also satisfied here.  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

46.     Plaintiff's "Prayer for Relief" seeks "in excess of $25,000."  (Compl. at page 18.) Where a complaint seeks damages "in excess" of a certain amount, "the amount in controversy is not measured by the low end of [those] open-ended claim[s], but rather by a reasonable reading of the value of the rights being litigated."  *Angus v. Shiley Inc.*, 989 F.2d 142, 145-46 (3d Cir. 1993); *accord Turntine v. Peterson*, 959 F.3d 873, 880 (8th Cir. 2020); *Erdman v. Robinson*, 115 F. App'x

778, 780 (6th Cir. 2004); *Lupo Chiropractic Life Ctr. P.C. v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 135191, at *1 (E.D. Mich. Jan. 8, 2010).  A reasonable reading of Plaintiff's Complaint demonstrates that the amount in controversy exceeds $75,000.

47.     Here, Plaintiff seeks damages for past and future medical bills, lost income and benefits, loss of ability to earn income, past and future pain and suffering, incidental costs, damages to her credit, punitive damages, costs, attorney's fees, interest, all property loss, and all other relief to which she is entitled.  (Compl. at pages 17-18.)

48.     Kentucky district courts have found that the amount-in-controversy requirement was readily satisfied in analogous cases involving allegations of serious bodily injuries and multi-day hospital stays.  *See, e.g.*, *Hendrickson v. Gen. Motors LLC*, 2019 WL 11715669, at *3 (W.D. Ky. Nov. 6, 2019) (collecting authority); *see also, e.g.*, *Hacker v. Aetna Life Ins. Co.*, 2019 WL 638369, at *2 (E.D. Ky. Feb. 13, 2019); *Davis v. Kindred Nursing Centers E., LLC*, 2006 WL 508802, at *3 (S.D. Ohio Mar. 2, 2006).

**III.     <u>This Court Has Federal Question Jurisdiction.</u>**

49.     Removal of this action is also proper under 28 U.S.C. § 1441(a) on the basis of "original jurisdiction" because Plaintiff asserts claims "arising under" federal law.  28 U.S.C. § 1331.  Plaintiff's claims arise under federal law because they are both governed and completely preempted by the PREP Act, 42 U.S.C. §§ 247d-6d(d), 247d-6e (West 2020).

50.     Over a decade ago, Congress recognized the possibility that our country could face devastating public health emergencies such as COVID-19 that would require the swift mobilization of scientific, medical, and other countermeasures on a massive scale.  Moderna's development of its COVID-19 Vaccine was exactly the kind of public health response Congress aimed to facilitate through the PREP Act.  In particular, Congress wanted to encourage

pharmaceutical and biotechnology companies to devote more resources to researching and developing new vaccines and medicines so that the country would be prepared in the event of a public health crisis like the COVID-19 pandemic.  One of the barriers that companies have faced in pursuing new vaccines and medicines has been the potentially enormous financial risk of liability from lawsuits related to products that may be widely used in the event of a public health emergency.[15]  In the PREP Act, Congress helped to remove that challenge and incentivize research and development of new products that might help save lives.  Specifically, the PREP Act's fundamental purpose is to "encourage[] the design, development, clinical testing or investigation, manufacture, labeling, distribution, . . . and use" of vaccines and other countermeasures aimed at addressing public health emergencies.  *Id*. § 247d-6d(b)(6).  To achieve this goal, the PREP Act broadly shields certain entities such as manufacturers and medical professionals by directing that such covered persons "***shall be immune*** from suit and liability under Federal and State law" in relation to the administration or use of "covered countermeasures," including COVID-19 vaccines.  *Id*. § 247d-6d(a)(1) (emphasis added).

51.     Plaintiff's claims of negligence and battery against Moderna arise out of the administration of Moderna's COVID-19 Vaccine and are governed and completely preempted by the PREP Act and the Declaration.[16]

---

[15] *See, e.g*., Emily Field, *Ebola Vaccine Makers Get Liability Immunity From HHS*, Law360 (Dec. 9, 2014), *available at* https://www.law360.com/articles/602936/ebola-vaccine-makers-get-liability-immunity-from-hhs .

[16] Although some district courts within the Sixth Circuit have held that the PREP Act does not completely preempt state law claims, none of those cases involved claims against COVID-19 vaccine manufacturers.  Instead, the cases generally involved alleged improper action or inaction by nursing homes or assisted living facilities during the pandemic, which are far removed from Moderna's role as a vaccine manufacturer.  *See, e.g*., *Wimberly v. Montefiore*, 2022 WL 1120394 (N.D. Ohio Apr. 14, 2022); *Massamore v. RBRC, Inc.*, 2022 WL 989178 (W.D. Ky. Mar. 31, 2022), *appeal pending*, No. 22-5381; *Singer v. Montefiore*, 2021 WL 6111671 (N.D. Ohio Dec.

52.     *First*, Moderna is squarely covered by the PREP Act and is "immune from suit and liability under Federal and State law" for claims like Plaintiff's relating to the Moderna COVID-19 Vaccine.  42 U.S.C. § 247d-6d(a)(1).  The Act provides immunity to a "covered person" for "claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure."  *Id.* § 247d-6d(a).  A "covered countermeasure" includes "*any vaccine*" that is "used to treat, diagnose, cure, prevent, or mitigate COVID–19, or the transmission of SARS-CoV–2 or a virus mutating therefrom."  Declaration, 85 Fed. Reg. at 15202 (emphasis added); 42 U.S.C. § 247d-6d(i)(1).  The Moderna COVID-19 Vaccine was authorized and later approved by the FDA to prevent COVID-19 in adults and is, therefore, unquestionably a covered countermeasure.  42 U.S.C. § 247d-6d(i)(1).

53.     As the manufacturer of the Vaccine, Moderna qualifies as a "covered person."  *Id.* § 247d-6d(i)(2)(B). Plaintiff's claims, which concern the administration of the Vaccine in accordance with the public health and medical response of the State of Kentucky (*see, e.g.*, Compl. ¶ 4), necessarily "aris[e] out of, relat[e] to, or result[] from" the administration and use of a covered countermeasure and are thus exclusively governed by the PREP Act.  42 U.S.C. § 247d-6d(a).

54.     *Second*, Plaintiff's claims are completely preempted by the PREP Act because it displaces state law causes of action and provides an exclusive federal remedy to compensate eligible individuals who allege they experienced personal injuries as a result of receiving a COVID-19 vaccine.  *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003); 42 U.S.C. § 247d-6e.  With one narrow exception discussed below, the Act permits individuals to assert claims for alleged personal injuries from a covered countermeasure only through the Countermeasures

27, 2021), *appeal pending*, No. 22-3083; *Est. of Cowan v. LP Columbia KY, LLC*, 530 F. Supp. 3d 695 (W.D. Ky. Mar. 31, 2021).

Injury Compensation Program ("CICP"), which is designed to provide "timely, uniform, and adequate compensation" through a no-fault claims process.  42 U.S.C. § 247d-6e(a).  That federal administrative remedy is "exclusive."  *Id*. § 247d-6e(d).

55.     The "sole exception" to immunity under the Act and to the federal administrative remedy it provides through the CICP is "***an exclusive Federal cause of action***" for "death or serious physical injury proximately caused by willful misconduct."  *Id.* § 247d-6d(d)(1) (emphasis added); *see also Massamore*, 2022 WL 989178, at *2; *Est. of Cowan*, 530 F. Supp. 3d at 700; *Singer*, 2021 WL 6111671, at *2-3.  Such an action "***shall*** be filed and maintained only in the United States District Court for the District of Columbia."  42 U.S.C. § 247d-6d(e)(1) (emphasis added).  Thus, while Plaintiff has not satisfied the pleading or procedural requirements for such an action, *id.* § 247d-6d(e), even if the Court were to interpret Plaintiff's battery cause of action as alleging willful misconduct,[17] Plaintiff could proceed only in federal court (and only in the United States District Court for the District of Columbia after Plaintiff exhausted all administrative remedies).

56.     Where, as here, "a federal statute wholly displaces [a] state-law cause of action" by "provid[ing] the exclusive cause of action for the claim asserted and [] set[ting] forth procedures and remedies governing that cause of action," state law claims are completely preempted and federal question jurisdiction exists.  *Anderson*, 539 U.S. at 8; *see also Hogan v. Jacobson*, 823

---

[17] To be sure, Plaintiff's Complaint does not support such an interpretation.  As to battery, Plaintiff alleges that Moderna "committed battery" against Plaintiff by distributing a "high risk" vaccine "that was contraindicated for [Plaintiff's] medical condition."  (Compl. ¶¶ 36-38 (page 17).)  These allegations do not come close to satisfying any of the three required elements of "willful misconduct" under the PREP Act.  *See* 42 U.S.C. § 247d-6d(c) (defining willful misconduct as "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit").

F.3d 872, 883 (6th Cir. 2016); *Milby v. MCMC LLC*, 844 F.3d 605, 612 (6th Cir. 2016); *Val's Auto Sales & Repair, LLC v. Garcia*, 367 F. Supp. 3d 613, 626 (E.D. Ky. 2019).

57.     Congress gave yet further confirmation that it intended the PREP Act to completely preempt state law claims by including an express preemption clause in Act.  The Act provides that "no State or political subdivision of a State may establish, enforce, or continue in effect" any state law relating to a covered countermeasure that "is different from, or is in conflict with, any requirement" under the Act or that "relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, . . . labeling, licensing, use, [or] any other aspect of safety or efficacy" of a covered countermeasure.  42 U.S.C. § 247d-6d(b)(8).

58.     As one appellate court observed in holding that state law negligence and battery claims were preempted under the PREP Act, "the breadth of the [Act's] preemption clause," "the sweeping language of the statute's immunity provision," and the Act's "provision of . . . exclusive federal remedies" in the form of the CICP and "a separate federal cause of action for . . . willful misconduct," together show that "Congress intended to preempt all state law tort claims arising from the administration of covered countermeasures."  *Parker v. St. Lawrence Cty. Pub. Health Dep't*, 102 A.D.3d 140, 143-44 (N.Y. App. Div. 2012).

59.     "The plain language of the PREP Act makes clear that there is complete preemption of state law" claims involving conduct covered by the Act.  Fifth Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 7872, 7874 (Feb. 2, 2021).  Plaintiff's claims are governed and completely preempted by the PREP Act, and, thus, this Court has federal question jurisdiction over this action.

## PROCEDURAL REQUIREMENTS

60.     This notice is filed on behalf of Moderna pursuant to 28 U.S.C. § 1446(b)(2)(A).

61.     Concurrent with the filing of this Notice or promptly thereafter, Moderna is serving this Notice of Removal on all other parties pursuant to 28 U.S.C. § 1446(d).

62.     Pursuant to 28 U.S.C. § 1446(a), copies of pleadings and documents from Boone Circuit Court served upon Moderna are attached as Exhibit A.  A copy of the docket is attached hereto as Exhibit C.

63.     This removal is timely under 28 U.S.C. § 1446(b) because Moderna was served with the Summons and Complaint on June 29, 2022.

64.     Removal to the United States District Court for the Eastern District of Kentucky is proper because the Complaint was filed in Boone Circuit Court, which is located within the jurisdiction of this District.  *See* 28 U.S.C. § 97; *see also* 28 U.S.C. § 1441, *et seq.*

65.     Pursuant to 28 U.S.C. § 1446 (b)(2), the following Defendants consent to removal: The Kroger Co., Saint Elizabeth Medical Center, Inc., Tri-State Gastroenterology Associates, and Joel M. Warren, M.D.  By filing this Notice of Removal, neither Moderna nor any other Defendant waives any defense that may be available to them and reserve all such defenses.

**WHEREFORE**, having shown that this case is removable under the federal officer statute, and on the bases of diversity jurisdiction and federal question jurisdiction, Moderna provides notice pursuant to 28 U.S.C. § 1446 that the Action pending in Boone Circuit Court as Case No. 22-CI-00701 is removed to the United States District Court for the Eastern District of Kentucky, Covington Division, and respectfully requests that this Court exercise jurisdiction over this case.

Dated: July 18, 2022                                Respectfully submitted,

                                                    FROST BROWN TODD LLC


                                                    /s/ Lori E. Hammond
                                                    Lori E. Hammond
                                                    400 West Market Street, 32nd Floor
                                                    Louisville, Kentucky 40202-3363
                                                    (502) 589-5400 - Phone
                                                    (502) 581-1087 - Fax
                                                    lhammond@fbtlaw.com

                                                    Sara B. Roitman*
                                                    DECHERT LLP
                                                    35 West Wacker Drive, Suite 3400
                                                    Chicago, IL 60601-1608
                                                    Telephone: (312) 646-5857
                                                    Facsimile: (312) 646-5858
                                                    sara.roitman@dechert.com

                                                    Mara Cusker Gonzalez*
                                                    DECHERT LLP
                                                    Three Bryant Park
                                                    1095 Avenue of the Americas
                                                    New York, NY 10036-6797
                                                    Telephone: (212) 641-5665
                                                    Facsimile: (212) 698 3599
                                                    mara.cuskergonzalez@dechert.com

                                                    *Pro hac vice forthcoming

                                                    Counsel for Defendant ModernaTX, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed with the Clerk of

Court using the CM/ECF system and served by depositing the same in the United States Mail,

postage prepaid, on July 18, 2022 to:

A. Dominick Romeo
DETERS LAW
5247 Madison Pike
Independence, KY 41051
(859) 363-1900
dromeo@ericdeters.com
  *Counsel for Plaintiff*

Clay Edwards
O'BRYAN BROWN & TONER
401 South 4th Street
Louisville, KY  40202
(502) 585-4700
edwardsc@obtlaw.com
  *Counsel for Tri-State Gastroenterology*
*Associates, and Joel M. Warren, M.D.*

Chuck Hinegardner
BARRON PECK BENNIE & SCHLEMMER CO.  LPA
3074 Madison Road
Cincinnati, OH 45209
(513) 533-2029
clh@bpbslaw.com
  *Counsel for The Kroger Co.*

Cathy Stickles
DBL LAW
109 East Fourth Street
Covington, KY  41011
(859) 426-2175
cstickles@dbllaw.com
  *Counsel for Saint Elizabeth Medical Center,*
*Inc.*


*/s/ Lori E. Hammond*
*Counsel for Defendant, ModernaTX, Inc.*


EN10666.Public-10666   4861-3178-9098v1