UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 22-91-DLB-CJS

LISA KAY GOINS                                                            PLAINTIFF

v.                        **MEMORANDUM OPINION AND ORDER**

SAINT ELIZABETH MEDICAL CENTER, et al.                  DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

This matter is before the Court upon four Motions to Dismiss filed by Defendants ModernaTX, Inc. (Doc. # 12); The Kroger Company (Docs. # 14 and 16); and Tri-State Gastroenterology Associates and Dr. Joel M. Warren (Doc. # 15). Plaintiff Lisa Kay Goins has not responded to any of the pending motions, and the time for doing so has passed. Thus, each motion is ripe for the Court's review. For the reasons stated herein, the Motions to Dismiss filed by ModernaTX, Inc. (Doc. # 12) and the Kroger Company (Doc. # 16) are **granted**, the Motion to Dismiss filed by Tri-State Gastroenterology Associates and Dr. Joel M. Warren (Doc. # 15) is **denied**, and this matter is otherwise **remanded** to Boone Circuit Court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lisa Kay Goins filed this action in Boone Circuit Court in June 2022, alleging claims against ModernaTX, Inc. ("Moderna"), the manufacturer of a COVID-19 vaccine that Ms. Goins received; the Kroger Company ("Kroger"), which distributed the vaccine and provided it to Ms. Goins; Saint Elizabeth Medical Center ("St. Elizabeth"),

1

which provided care to Ms. Goins during a health episode following her receipt of the vaccine; Tri-State Gastroenterology Associates ("Tri-State") and Dr. Joel Warren, who performed a surgery on Ms. Goins as part of the same health episode; and anonymous defendant employees of St. Elizabeth. (*See generally* Doc. # 1-2).

More specifically, Ms. Goins alleges that the Moderna vaccine she received caused her blood glucose levels to "fluctuate[] from her standard controlled level," which began a series of unfortunate healthcare events. (*Id*. ¶ 14). When Ms. Goins' blood glucose initially fell, she went to the emergency room at St. Elizabeth in Florence and was admitted to the hospital for "erratic hypoglycemia and shortness of breath." (*Id*. ¶ 15). According to Ms. Goins, the doctors at St. Elizabeth Florence were perplexed by her case and told her that they had "never seen anything like it." (*Id*. ¶ 19). St. Elizabeth referred Ms. Goins to Tri-State Gastroenterology, where she was examined by Dr. Joel Warren at some time following her discharge from the hospital. (*Id.* ¶ 22). Dr. Warren performed an endoscopic ultrasound and a pancreatic biopsy on Ms. Goins to determine if a mass was present on her pancreas. (*Id.* ¶¶ 23-24).

The ultrasound and biopsy resulted in no mass being found (*id.* ¶ 23), and Dr. Warren diagnosed Ms. Goins with "non-specific slightly hyperechoic pancreatic parenchyma with no identifiable mass." (*Id.* ¶ 25). In spite of that diagnosis, Ms. Goins further attests that some unidentified "doctors stated [her condition] could have been a reaction to her [] second Moderna COVID-19 vaccine." (*Id.* ¶ 26). The hospital then discharged Ms. Goins, and "[o]ver the [following] several weeks, Ms. Goins noticed she was very weak and had a loss of appetite." (*Id.* ¶¶ 27-28). Ms. Goins' condition continued to worsen, and she went to an emergency room at Harrison Memorial Hospital in

2

Cynthiana.  (*Id.* ¶¶ 28-30).  Harrison Memorial admitted Ms. Goins to the hospital and determined that she had pancreatitis and a pseudocyst on her pancreas.  (*Id.* ¶¶ 31-32).  The ER doctor at Harrison Memorial "indicated the pseudocyst on the pancreas was more than likely caused from any irritation like a biopsy."  (*Id.* ¶ 33).  The hospital discharged Ms. Goins two days later.  (*Id.* ¶ 34).

According to Ms. Goins, she continued to have a loss of appetite and could not hold down food after she left Harrison Memorial (*id.* ¶ 35), which prompted her to schedule a telehealth appointment.  (*Id.* ¶ 36).  The telehealth doctor instructed Ms. Goins to immediately go to an emergency room, and she went to St. Elizabeth in Edgewood.  (*Id.* ¶¶ 36-37).  At St. Elizabeth Edgewood, Ms. Goins was found to have internal bleeding, a "subcapsular splenic hematoma and presence of subcapsular splenic parenchymal laceration / rupture."  (*Id.* ¶ 40).  From there, a doctor performed an emergency surgery to fix Ms. Goins' internal bleeding and diagnosed her with "hemorrhagic shock, pancreatic necrosis, pancreatitis associated with posterior wall gastric perforation, spleen hematoma, acute blood loss, and acute pancreatitis."  (*Id.* ¶ 42).  The doctors at St. Elizabeth then performed a second surgery on Ms. Goins in October 2021 to place a drainage tube in her pancreas.  (*Id.* ¶ 46).

The second surgery caused Ms. Goins to experience many after-effects, including being on a liquid diet (*id.* ¶ 47), being weak and having to undergo physical therapy twice a week, including using a walker and having a feeding tube.  (*Id.* ¶¶ 48, 52).  Ms. Goins attests that the after-effects of the surgery caused her to be "devastated [and] concerned she could not do basic skills, walk, or go up and down steps," which in turn caused her to become depressed.  (*Id.* ¶ 49).  After being discharged with a feeding tube, Ms. Goins'

3

feeding tube port became infected, and after the infection was treated, Ms. Goins' feeding tube was removed in December 2021.  (*Id.* ¶¶ 58, 60, 63).  According to Ms. Goins, this series of events, beginning with her surgery in August 2021, was a "life altering experience" that caused her to suffer many different types of damages.  (*E.g.*, *id.* ¶ 64).  While unclear, the gravamen of Ms. Goins' complaint seems to be that her Moderna COVID-19 vaccine caused the entire ordeal.  (*See id.* at 22).  Otherwise, Ms. Goins has also asserted general malpractice claims against the healthcare providers who treated her.  (*See, e.g.*, *id.* at 16-17).

Ms. Goins filed this action in Boone Circuit Court in June 2022, and St. Elizabeth filed an Answer to the Complaint in state court.  (Doc. # 10).  In July 2022, Moderna filed a Notice of Removal (Doc. # 1), removing the case to this Court.  Moderna's Notice of Removal invoked multiple bases for subject-matter jurisdiction, including federal officer removal under 28 U.S.C. § 1442.[1]  (Doc. # 1 at 4).  Since the case's removal, Ms. Goins has not made any filings in the case, except for a Notice of Appearance filed on her behalf. (Docs. # 28 and 29).  As part of that complete lack of prosecution, Ms. Goins has notably failed to respond to any of the four pending Motions to Dismiss, which were each filed in July 2022.  (Docs. # 12, 14, 15, 16).  The time for filing responses has passed, and the pending motions are thus ripe for the Court's review.

---

[1] The Court recognizes its independent duty to assess subject matter jurisdiction, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), and accordingly finds that jurisdiction is proper under 28 U.S.C. § 1442 for the reasons stated in Moderna's well-taken Notice of Removal.  *Cf. Johnson v. Tyson Foods*, No. 21-CV-1161, 2021 WL 5107723 (W.D. Tenn. Nov. 3, 2021); (Doc. # 1). Removal under § 1442 by one defendant removes an entire case and does not require consent of other defendants.  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1084 n.7 (6th Cir. 2010).  Accordingly, the Court is bestowed with subject-matter jurisdiction to address each of the pending Motions to Dismiss.

**III.    ANALYSIS**

Local Rule 7.1(c) provides that "[f]ailure to timely respond to a motion may be grounds for granting the motion." LR 7.1(c). However, in the Sixth Circuit, a failure to respond is not alone a reason for a court to grant a motion to dismiss, even when local rules permit such a granting. *Allstate Ins. Co. v. LG&E Energy, LLC*, 201 F. App'x 311, 315 (6th Cir. 2006) (citing *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991)). Instead, as the Sixth Circuit explained in *Carver*, the district court "is required, at a minimum, to examine the movant's motion . . . to ensure that he has discharged [his] burden." 946 F.2d at 455 (explaining that a motion to dismiss should be processed in the same manner as a motion for summary judgment, ensuring that burdens are met); *see also Green v. City of Southfield*, 759 F. App'x 410, 417 (6th Cir. 2018) ("where the adverse party has not responded to a motion to dismiss, the district court must consider the evidence presented and make a determination accordingly."). Nonetheless, a court may dismiss an action by granting an unopposed motion if the nonmoving party's behavior "rises to the level of a failure to prosecute under Rule 41(b)." *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 615 (6th Cir. 1998) (citing *Carver*, 946 F.2d at 454).

Here, the Court notes at the outset that Plaintiff has almost entirely failed to prosecute her case since its removal from Boone Circuit, with the only activity being taken on her behalf being the filing of a Notice of Appearance.[2] (Doc. # 29). The Notice contains one sentence and merely notes that Alan Statman will be appearing on Ms. Goins' behalf.

---

[2]     Ms. Goins' counsel has filed two Notices of Appearance, with the second amending the first. The second Notice at Doc. # 29 is an Amended Notice of Appearance, changing the attorney's firm designation as being Of Counsel for "Deters Law Co. II, P.A." at an address in Cleveland, Ohio (Doc. # 29), while the first Notice listed the same designation as "Deters Law" at an address in Independence, Kentucky. (Doc. # 28).

5

(*Id.*). Notably, the Notice was filed while all four Motions to Dismiss remained pending, and after the deadline to respond to each had passed. (*See, e.g.* Doc. # 12). Plaintiff likewise did not file a Motion to Remand the case back to state court where she filed it. In sum, notwithstanding the one-sentence Notice, all signs point to Plaintiff having completely abandoned her case. While the Court accordingly notes that this case is susceptible to dismissal under Rule 41(b), it will adjudicate the instant motions to dismiss in light of *Carver*, addressing each on the merits.

### A. Standard of Review

In evaluating a 12(b)(6) motion to dismiss, a court is called to assess whether the plaintiff has "state[d] a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added). In making that assessment, a court should accept the plaintiff's allegations as true, and then determine whether the plaintiff has pled sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "if the plaintiffs do 'not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed.'" *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc), (quoting *Twombly*, 550 U.S. at 570) (cleaned up), *cert. denied*, 572 U.S. 1100 (2014).

To give rise to plausibility, the complaint must contain factual allegations that speak to all of a claim's material elements "under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In short, a claim cannot survive a motion to dismiss if the plaintiff has not pleaded sufficiently plausible facts to support a "viable legal theory" with respect to all material elements of each claim. *See id.*

Affirmative defenses, when raised in a motion to dismiss, likewise aim to defeat the "viable legal theory" upon which the plaintiff's complaint rests.[3] However, when evaluating an affirmative defense in a motion to dismiss, a court must still only look to the facts alleged in the plaintiff's complaint, albeit alongside the legal elements of the affirmative defense raised in the defendant's motion to dismiss. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). If the elements of an affirmative defense are met by the factual allegations contained in the complaint, then the district court may grant the motion to dismiss. *Estate of Barney v. PNC Bank, Nat'l Assn.*, 714 F.3d 920, 926 (6th Cir. 2013). Generally, preemption arguments are affirmative defenses. *See, e.g., Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 674-75 (6th Cir. 2013); *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 913 (6th Cir. 2007).

In this case, each of the pending Motions to Dismiss posits that Ms. Goins' claims against each respective defendant are expressly preempted by the PREP Act.[4] (*See* Docs. # 12, 14, and 15). Thus, the Court will begin its analysis with an overview of the PREP Act's preemption provision, and then proceed to determine whether the claims against each defendant should be dismissed under Rule 12(b)(6).

---

[3]  "A motion to dismiss can be premised on an affirmative defense provided that 'the plaintiff's own allegations show that a defense exists that *legally defeats the claim for relief*.'" *Marsh v. Genentech, Inc.*, 693 F.3d 546, 555 (6th Cir. 2012) (quoting 5B Charles Alan Wright and Arthur Miller, *Federal Prac. & Proc.* § 1357, at 713 (3d ed. 2004) (emphasis added)).

[4]  However, in light of subject-matter jurisdiction being bestowed by 28 U.S.C § 1442, *supra* note 1, the Court notes that it declines to address the arguments regarding complete preemption raised by Moderna and Tri-State in their removal notices. (Docs. # 1 and 9). Instead, the Court focuses its inquiry in the dismissal context on express, or ordinary, preemption (differing from complete preemption), which serves as a federal defense to state law claims, but otherwise does not confer subject-matter jurisdiction on a claim filed in state court. *See, e.g., Hudak v. Hills*, 566 F. Supp. 3d 771, 785 (N.D. Ohio 2021); *Cowan v. LP Columbia, Ky. LLC*, 530 F. Supp. 3d 695, 701-03 (W.D. Ky. 2021). The difference between express preemption and complete preemption is frequently explained in the context of ERISA cases. *E.g., Wilson v. Unum Grp.*, No. 7:20-CV-122-DLB, 2021 WL 4268046, at *2-3 (E.D. Ky. Sept. 20, 2021).

### B. The PREP Act

The PREP Act, codified in Title 42 of the United States Code, "empowers the Secretary of the Department of Health and Human Services to deem an event a 'public health emergency' and then take action to utilize funds established by the Treasury to manage the emergency." *Cowan v. LP Columbia, Ky. LLC*, 530 F. Supp. 3d 695, 699 (W.D. Ky. 2021) (internal quotations omitted). In March 2020, the Secretary invoked the PREP Act and declared the COVID-19 pandemic to be a public health emergency. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (March 17, 2020).

In addition to providing the HHS with power to utilize funding, invocation of the PREP Act also provides federal tort immunity to liability for "covered persons" taking part in "covered countermeasures" to ensure that the government can act swiftly in response to an emergency – specifically, a pandemic. *See* 42 U.S.C. § 247d-6d. More specifically, the law provides that:

> [A] covered person shall be immune from suit and liability under federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration . . . has been issued with respect to such countermeasure.

*Id.* at (a)(1). The PREP Act's immunity provisions only contain one exception for willful misconduct, and it requires that an action asserting willful misconduct in relation to a covered countermeasure be filed in the United States District Court for the District of Columbia. *Id.* at (e)(1); *Cannon v. Watermark Ret. Cmtys., Inc.*, 45 F.4th 137 (D.C. Cir. 2022). Otherwise, if a person desires to make any claim for compensation resulting from an injury "directly caused by the administration or use of a covered countermeasure," the

8

PREP Act requires that such a claim is handled through an administrative process for compensation by the Covered Countermeasure Process Fund, which is established by the Act.  42 U.S.C. § 247d-6e(a).  In other words, the Act provides two avenues of recourse: the Covered Countermeasure Process Fund, *see id.*, and for cases of willful misconduct, a federal suit in the District of Columbia.  42 U.S.C. § 246d-6d(e)(1).  Otherwise, a "covered person" under the Act is completely immune from suit for conduct relating to covered countermeasures.

Most importantly to the instant case, the PREP Act also contains an express preemption clause, which provides that "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that . . . is different from, or is in conflict with, any requirement applicable under this section[.]"  42 U.S.C. § 247d-6d(b)(8)(A).  The Act's preemption clause provides a federal defense to state law claims and "correspondingly extends immunity to covered individuals."  *Cowan*, 530 F. Supp. 3d at 701.  Thus, to determine whether the PREP Act's preemption and resulting immunity applies to the claims in this case, the Court must determine (1) whether each moving Defendant is a "covered person" under the Act, (2) whether the Moderna vaccine is a "covered countermeasure," and (3) whether Ms. Goins' state law claims against each moving Defendant are "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure."  42 U.S.C. § 247d-6d(a)(1).

As a threshold matter, the Court notes that the Moderna COVID-19 vaccine is a "covered countermeasure" under the PREP Act, as the HHS Secretary declared it as such in March 2020.  *See* Declaration Under the Public Readiness and Emergency

9

Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (March 17, 2020). Accordingly, the Court's evaluation of the pending motions turns on whether each moving Defendant is a "covered person," and whether Ms. Goins' claims against each moving Defendant are sufficiently related to the administration or use of her Moderna vaccine.

### C. Moderna's Motion to Dismiss (Doc. # 12)

The PREP Act's definition of "covered person" includes "a person or entity that is a manufacturer of [a covered] countermeasure." 42 U.S.C. § 247d-6d(i)(2)(B)(i). Ms. Goins' Complaint identifies Moderna as "a pharmaceutical and biotechnology company providing qualified transformative vaccination mRNA medicine (COVID-19) to initiate an immune response to fight against Coronavirus Disease." (sic *generally*) (Doc. # 1-2 ¶ 9). As previously stated, Moderna's COVID-19 vaccine is a covered countermeasure, and as it is the company "providing" the vaccine, as stated by Ms. Goins, or in other words, manufacturing it, Moderna is thus a covered person under the PREP Act.

Ms. Goins' claims against Moderna are for negligence and battery under Kentucky law. (Doc. # 1-2 at 21-22).[5] While unclear what specific allegations relate to those claims, Ms. Goins' Complaint is clear that each of the claims are "arising out of, relating to, or resulting from" Moderna's manufacturing of the COVID vaccine. 42 U.S.C. § 247d-6d(a)(1). At Paragraph 34, Ms. Goins writes that Moderna "breached [its] duty by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent pharmaceutical and biotechnology company provider would have exercised," and at

---

[5] Notably, Ms. Goins has failed to apply any of the facts in her Complaint to these claims, meaning they could also be dismissed under 12(b)(6) as inadequate "formulaic recitation[s] of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555.

Paragraph 37, she writes that Moderna "distribut[ed] a high risk pharmaceutical of transformative mRNA medicine[.]" (Doc. # 1-2). Otherwise, the facts contained in her Complaint only reference Moderna as the manufacturer of the vaccine. (*See, e.g.*, *id.* at ¶¶ 12-14). As a result, it is clear to the Court that when she labels Moderna as a "pharmaceutical and biotechnology company provider," Ms. Goins is actually referring to Moderna as the manufacturer of her COVID vaccine. Ms. Goins' state law battery and negligence claims against Moderna, a covered person, are thus related to Moderna's manufacturing of the vaccine, a covered countermeasure, and are expressly preempted by the PREP Act. Accordingly, Moderna's Motion to Dismiss (Doc. # 12) is **granted**.

### D.     Kroger's Motion to Dismiss (Doc. # 16)[6]

The PREP Act also includes an "entity that is . . . a distributor of [a covered] countermeasure" within its definition of "covered person." 42 U.S.C. § 247d-6d(i)(2)(B)(ii). In Ms. Goins' Complaint, she notes that she received the Moderna vaccine from Kroger, meaning that it distributed the vaccine to her. (Doc. # 1-2 ¶12). Therefore, Kroger is a "covered person" under the PREP Act because it is a distributor of the Moderna vaccine, a covered countermeasure.

Ms. Goins' claims against Kroger are nearly verbatim to her claims against Moderna,[7] except that she writes Kroger committed battery "by performing a high risk procedure of injection of transformative vaccine mRNA medicine (COVID-19)

---

[6]     Kroger filed duplicate Motions to Dismiss in this action (Docs. # 14 and 16), but they are the same, and it appears that Kroger's counsel filed the second motion in response to a Notice from the Clerk's Office that the first motion did not contain a proposed order. The first motion will thus be denied as moot, as the Court has considered the second.

[7]     The same deficiencies likewise apply to the Kroger claims that apply to the Moderna claims. *See supra* note 5.

procedure[.]" (sic *generally*) (Doc. # 1-2 ¶¶ 30). In other words, Ms. Goins alleges that Kroger battered her when it injected her with the Moderna vaccine, which Ms. Goins has packaged as a "procedure," and that Kroger was also negligent in doing so. (*See id.*). Ms. Goins' state law battery and negligence claims thus arise from Kroger's administration of the Moderna COVID vaccine and are expressly preempted by the PREP Act. Kroger's Motion to Dismiss (Doc. # 16) is accordingly **granted**.

### E.    Tri-State and Dr. Warren's Motion to Dismiss (Doc. # 15)

As previously noted, the PREP Act's protections only apply to "covered persons" facing suit from actions "caused by, arising out of, relating to, or resulting from" the administration of a covered countermeasure. 42 U.S.C. § 247d-6d(a)(1). In their Motion to Dismiss, Tri-State and Dr. Warren make clear that Ms. Goins' claims against these Defendants relate to the administration of her Moderna COVID vaccine. (Doc. # 15-1). However, that argument isn't sufficient on its own, as Dr. Warren and Tri-State must also be "covered persons" under the Act to utilize its protections. While the Court agrees that ultimately, the gravamen of Ms. Goins' complaint seems to be her COVID vaccine and an alleged "contraindication" caused by it, the nature of the plaintiff's claims is a separate inquiry from whether a defendant is a "covered person" under the Act. After reading the Motion and reviewing the facts alleged in the Complaint, the Court has concluded that Dr. Warren and Tri-State are not "covered persons" under the PREP Act, and their Motion to Dismiss will be denied for that reason.

The PREP Act provides that its definition of "covered person" includes "a person or entity that is a qualified person *who prescribed, administered, or dispensed such countermeasure.*" 42 U.S.C. § 247d-6d(i)(2)(B)(iv) (emphasis added). The Act further

defines "qualified person" as any medical provider who is licensed to "prescribe, administer, or dispense" qualified countermeasures. 42 U.S.C. § 247d-6d(i)(8). Tri-State and Dr. Warren have argued that Dr. Warren is a "qualified person" because he holds a Kentucky medical license, thereby authorizing him to prescribe and dispense COVID vaccines, and that he is a "covered person" because Ms. Goins' claims against Dr. Warren relate to the administration of her COVID vaccine. (*See generally* Doc. # 15). The Court agrees with these Defendants that Dr. Warren is a "qualified person" under the Act, but no facts exist within the Complaint to show that he is a "covered person."

In the HHS Secretary's initial Declaration invoking the PREP Act in March 2020, he wrote that:

> the PREP Act's liability immunity applies to 'Covered Persons' with respect *to administration or use of a Covered Countermeasure*. The term 'Covered Persons' has a specific meaning and is defined in the PREP Act to include manufacturers, distributors, program planners, and qualified persons, and their officials, agents, and employees, and the United States.

Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15199 (March 17, 2020) (emphasis added). Reading the Declaration against the statute, it is clear to the Court that the Act only applies to "covered persons" insofar as those persons use a covered countermeasure in providing medical treatment or vaccination services to a patient. No facts are present in the Complaint to show that Dr. Warren and Tri-State administered, prescribed, or dispensed a vaccine to Ms. Goins or to any other patient.

To the extent that Dr. Warren argues that his treatment of Ms. Goins *after* she received a vaccine amounts to him "administering" a covered countermeasure, that argument is also unavailing. (*See* Doc. # 15-1 at 2). The March 2020 declaration

13

provides further guidance on the PREP Act's usage of the term "administration," specifying that "[t]he definition of 'administration' extends only to *physical provision* of a countermeasure to a recipient, such as . . . activities related to management and operation of programs and locations for providing countermeasures to recipients[.]" Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15200 (March 17, 2020) (emphasis added). The Declaration further provides examples, clarifying that even a slip-and-fall incident or a vehicle collision outside a vaccination center could be covered by the PREP Act's immunity provision, so long as such a claim "alleges, for example, lax security or chaotic crowd control." *Id.*

"Administration" of the vaccine thus refers to the logistical work it takes to provide vaccines, and Tri-State and Dr. Warren were not at all involved in Ms. Goins' receipt of the Moderna vaccine. In the Complaint, the vaccine itself is only mentioned once following Ms. Goins' retelling of her receiving the dose at Kroger: at Paragraph 26, where she writes that an unidentified group of doctors "stated [her condition] could have been a reaction to her July 31, 2021 second Moderna COVID-19 vaccine." (Doc. # 1-2 ¶ 26).

Otherwise, a close reading of the statute itself reveals that Dr. Warren is not a "covered person." In defining "covered person," the PREP Act uses past tense to state that a "covered person" is one who "prescribed, administered, or dispensed such countermeasure[.]" 42 U.S.C. § 247d-6d(i)(2)(B)(iv). Federal statutes "ascribe[] significance to verb tense," and different verb tenses carry different meanings. *Carr v. United States*, 560 U.S. 438, 448 (2010) (citing 1 U.S.C. § 1); *see also Russell v. Citigroup, Inc.*, 748 F.3d 677, 679 (6th Cir. 2014). In the PREP Act, Congress chose to

14

use the simple past tense "prescribed" instead of the present perfect tense "has prescribed" or the present tense "prescribes." See 42 U.S.C. § 247d-6d(i)(2)(B)(iv). The simple past tense "refers to action completed at a definite time in the past," while the present perfect tense "refers to action already completed or continuing in the present." Robert C. Farrell, *Why Grammar Matters: Conjugating Verbs in Modern Legal Opinions*, 40 Loy. U. Chi. L. J. 1, 19 (2008). Here, the statute's usage of "prescribed, administered, or dispensed," in the simple past tense, refers to an action completed at a definite time – when the countermeasure was prescribed, administered, or dispensed to the plaintiff.

Thus, even though Ms. Goins' claims against Dr. Warren and Tri-State are related to her COVID vaccine, none of her claims, and most importantly, none of the facts asserted alongside her claims, make allegations regarding Dr. Warren and Tri-State's prescription, administration, or dispensation of the vaccine. In that absence, Dr. Warren and Tri-State are not "covered persons" under the PREP Act, and its immunities are thus unavailable to them. For that reason, their Motion to Dismiss (Doc. # 15) is **denied**.

### F. Remaining Claims against St. Elizabeth, Tri-State, and Dr. Warren

As previously stated, the Court assessed subject-matter jurisdiction and accordingly exercised that jurisdiction by adjudicating the pending Motions before it. *Supra* note 1. After the dismissal of claims against Moderna and Kroger under the PREP Act, the remaining claims in this lawsuit are negligence, battery, and vicarious liability claims under Kentucky law regarding the medical treatment that Ms. Goins received from St. Elizabeth, Dr. Warren, and Tri-State. (*See* Doc. # 1-2). When a case is removed under 28 U.S.C § 1442, and the removing defendant is dismissed, the district court has discretion to continue to exercise supplemental jurisdiction over the remaining state law

claims, or to remand the case to state court. *Hensley v. Conner*, No. 3:18-CV-173, 2018 WL 6050593, at *2 (E.D. Tenn. Nov. 19, 2018) (citing *In re Romulus Cmty. Schs.*, 729 F.2d 431, 439 (6th Cir. 1984)). Here, the Court will decline to exercise its discretion to hear the remaining claims.

The overwhelming bulk of facts in this case relate not to Ms. Goins' vaccine, but instead to the medical care she received after taking the vaccine. To the extent that Ms. Goins has tacked on claims against the vaccine manufacturer and distributor, for whatever reasons she and her counsel chose to do so, it is appropriate that those entities have removed the case to federal court and invoked protections under the federal PREP Act to which they are legally entitled. Otherwise, in the absence of the vaccine defendants, this case is an ordinary malpractice suit brought under Kentucky law, by a Kentucky plaintiff, against Kentucky defendants. The matter will accordingly be remanded to state court for further adjudication.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) Moderna's Motion to Dismiss (Doc. # 12) is **GRANTED**;

(2) Kroger's First Motion to Dismiss (Doc. # 14) is **DENIED AS MOOT**;

(3) Tri-State and Dr. Warren's Motion to Dismiss (Doc. # 15) is **DENIED**;

(4) Kroger's Second Motion to Dismiss (Doc. # 16) is **GRANTED**;

(5) All claims against Moderna and Kroger are **DISMISSED WITH PREJUDICE**;

(6) This matter is otherwise **REMANDED** to Boone Circuit Court; and

(7) An accompanying **Judgment** is filed contemporaneously herewith.

This 9th day of November, 2022.



Signed By:
*David L. Bunning*   DB
United States District Judge

K:\DATA\ORDERS\Cov2022\22-91 MO re Dismissal.docx